J-S48039-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TERRELL WRIGHT | : | |
| | : | |
| Appellant | : | No. 2565 EDA 2019 |

Appeal from the PCRA Order Entered July 19, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0011742-2008

BEFORE: KUNSELMAN, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:          **FILED: DECEMBER 29, 2020**

Terrell Wright (Appellant) takes this counseled appeal from the order

entered in the Philadelphia County Court of Common Pleas, dismissing his

second Post Conviction Relief Act [1] (PCRA) petition as untimely filed. Appellant

avers that with regard to a new affidavit from an alleged eyewitness, the court

erred in not granting relief under the newly-discovered fact exception[2] and the

after-discovered evidence provision[3] of the PCRA. We affirm.

---

[1] 42 Pa.C.S. §§ 9541-9546.

[2] *See* 42 Pa.C.S. § 9545(b)(1)(ii).

[3] *See* 42 Pa.C.S. § 9543(a)(2)(vi).

Appellant was charged with first-degree murder[4] and related offenses. A jury trial commenced on April 5, 2010. This Court previously summarized the following: On the evening of June 17, 2007, the three victims, Jerret Washington, Sherrieff Watkins, and Eddie Moody were walking in North Philadelphia. **Commonwealth v. Wright**, 2430 EDA 2010 (unpub. memo. at 1-2) (Pa. Super. May 7, 2012) (direct appeal), *appeal denied*, 268 EAL 2012 (Pa. Nov. 28, 2012).

> The victims were confronted by three men. Appellant was identified by Watkins and Moody as one of the men. It was the Commonwealth's theory that the assault was in retaliation for a fight the previous day in which [two of the victims,] Watkins and Moody[,] beat up [A]ppellant and his brother. Upon being confronted, Moody ran in one direction and Watkins and Washington ran in another. Watkins and Washington were pursued and both were shot, Washington fatally. [Watkins was shot in the arm.]

*Id.* at 2.

> Shortly after the shooting, both [Watkins and Moody] signed statements identifying [Appellant] as the shooter, but, at trial, both denied knowing who shot [Washington.] In response to this surprising testimony, the Commonwealth had detectives read the signed statements to the jury.
>
> "Snitching" featured prominently in both the Commonwealth's . . . and the defense's theories of the case. . . .

**Commonwealth v. Wright**, 3106 EDA 2015 (unpub. memo. at 9-10) (Pa. Super. Aug. 4, 2017) (first PCRA petition), *citing* N.T. Trial, 4/6/10, at 38, 41-

---

[4] 18 Pa.C.S. § 2502(a).

42, 47. Furthermore, Officer Tyric Armstead, who responded to the shooting, testified he heard Watkins say at the scene, "I'm not snitching. I'm going to handle it." N.T., 4/7/10, at 14. Officer Jason Reid testified that at the hospital, where Watkins was being treated for his gunshot to the arm, Watkins told him, "I know who shot me, but I ain't snitching." *Id.* at 152.

As Appellant's present PCRA petition involves an alleged eyewitness, Ebony Green-Clowden (Green),[5] we review the following history in detail. "Just after the shooting," Officer Guy Colville[6] informally interviewed Green and her husband, Myron Clowden, on the scene. *See Wright*, 2430 EDA 2010 at 2; N.T. Voir Dire, 4/5/10, at 12. They lived on the block where the shooting occurred. N.T., 4/5/10, at 12. At this time, Green told Officer Colville:

> [Green] was outside on a chair in the area of the shooting. [She described] two males [that] she saw involved in the shooting. [The shooter was] a black male, tall and wearing a burgundy t-shirt and Khaki bucket type fishing hat. The second male was shorted (sic) wearing a dark shirt and black baseball hat pulled down low. [Green had also seen] the males earlier, prior to the incident. [She] was able to see the males when they looked at her. The males proceeded to leave and go around the corner. She started [sic] the males walked in the direction of where the shooting occurred. [Green] also stated that after she heard 5 or 6 gunshots, she saw these same two males running behind the two males that

---

[5] Although this witness was referred to as Ebony Green Clowden at trial, Appellant's present PCRA refers to her as Ebony Green. For ease of review, we likewise refer to her as "Green."

[6] Officer Colville and Officer Reid were partners at the time of the shooting. N.T., 4/7/10, at 146.

were shot.  She stated that when the males approached the intersection of 21st and Godfrey they split. One ran north and one ran south. The one that ran south was the one that was shooting.

[Green] did not review, sign, or adopt this statement.

*Wright*, 2430 EDA 2010 at 2-3 (citation omitted).

"[S]everal hours after the shooting," Green gave a statement to homicide detectives at the police station, denying she witnessed the shooting. N.T., 4/5/10, at 14.  She told detectives:

Earlier in the evening, [Green] noticed three men "checking out" the area.  One of the men was taller and another was shorter. She again saw these three men walking in the same area.  [Green] was in her house when she heard gunshots and **did not witness the shooting**.[ ]  . . .

*Wright*, 2430 EDA 2010 at 3 (emphasis added).  Green signed and adopted this statement.  *Id.*

The direct appeal panel of this Court explained:

Neither Officer Colville's nor [Green's] actual statements are contained in the record, although some reference is made to them in the notes of testimony.  [N.T., 4/5/10, at 12-15.]  Our account is largely drawn from the averments of the parties, particularly where they appear to agree.

*Wright*, 2430 EDA 2010 at 3 n.1

At the time of trial, Green's whereabouts were unknown.  *Wright*, 2430 EDA 2010 at 3.

At numerous times before and during trial, [A]ppellant sought, through various means, to obtain the whereabouts of [Green] so that he could present her testimony.  In the alternative, [A]ppellant also sought to present the testimony of [Green's

- 4 -

husband, Myron Clowden[7]] or Officer Colville's testimony as to [Green's] statements. Officer Colville, however, was unavailable due to injured-on-duty status, having undergone various surgeries and being heavily medicated.

*Id.* at 3-4. Immediately prior to jury *voir dire*, Appellant requested a continuance in order to locate Green. *Id.* at 4. In response, the Commonwealth averred it had also, unsuccessfully, attempted to contact Green. *Id.* at 6-8, *quoting* N.T., 4/5/10, at 14-18. Green's husband, Clowden, had informed the assistant district attorney (ADA) he believed Green was living in North Philadelphia with friends, and she "did not have a permanent home" or phone number. *Id.* at 6. The ADA further stated she received a call from Green at "a private number," but Green would not provide a contact number nor her whereabouts. *Id.* at 6-7. The trial court denied Appellant's continuance request.

On April 12, 2010, the jury found Appellant guilty of first-degree murder, attempted murder, possessing instruments of crime, and aggravated assault.[8] On the same day, the trial court imposed an aggregate sentence of life imprisonment. Appellant filed a post-sentence motion, which was denied by operation of law.

---

[7] "Myron Clowden's account was less detailed than that of his wife. He merely stated that he earlier saw two men in the area while he was walking his dog." *Wright*, 2430 EDA 2010 at 4 n.2.

[8] 18 Pa.C.S. §§ 901(a), 907(a), 2702(a).

Appellant took a direct appeal to this Court, claiming the trial court erred in denying a continuance. This Court denied relief and affirmed the judgment of sentence on May 7, 2012. Appellant sought allowance of appeal with our Supreme Court, which was denied on November 28, 2012.

Appellant filed a timely, counseled first PCRA petition on January 23, 2014, raising several claims of trial counsel's ineffectiveness. On September 18, 2014, the PCRA court denied relief without a hearing. Appellant appealed, and this Court affirmed on August 4, 2017. **Wright**, 3106 EDA 2015.

Appellant filed the underlying, counseled second PCRA petition on June 15, 2018, referring to both the newly-discovered fact exception at Section 9545(b)(1)(ii) and the after-discovered evidence provision at Section 9543(a)(2)(vi). He averred that on April 30, 2018, "through counsel, [he] was able to locate Ms. Green, who gave a signed statement." Appellant's Second Petition Pursuant to the Post Conviction Relief Act (Second PCRA Petition), 6/15/18, at 6. The handwritten statement, attached to the petition, averred:

> In July of 2008, I lived at in [sic] the area of Godfrey Ave. and Lambert St.
>
> Between 7:30 PM + 10:00 PM I witnessed a shooting on the block. I recall there were 3 males involved + the person who was shot.
>
> While still at the scene a police investigator . . . interviewed me + was writing notes. I was later taken by marked police car were [sic] I was interviewed by two male detectives. The older of the two detectives was writing a statement.

The detectives showed me a piece of paper w/a [sic] bunch of photos of men. They asked if I saw anyone that was around the neighborhood that night. I pointed to a guy I use to see on the basketball court. I explained he was not involved in the shooting. The detectives asked me to sign near the picture I recognized. I never said the guy in the picture was the shooter.

Appellant's Second Petition, Attachment A: Statement, 4/30/18. While the statement made no reference to Appellant, Appellant argued it was his photo that Green identified. Appellant's Second Petition at 6. Appellant likewise averred Green "indicated that she would testify to such at an evidentiary hearing;" the affidavit made no such statement. *Id.* Appellant further claimed, *inter alia*: (1) he was unable to locate Green at the time of trial despite the exercise of due diligence, "and has only recently been able to make contact with her;" (2) "Green's statement, given to police at the scene of the shooting, was more reliable than the tainted coerced statements given by [Watkins[9]], and should have been presented to the jury;" and (3) Green's statement "corroborates the [trial] testimony given by the Commonwealth's witness . . . that [Appellant] was not the shooter." *Id.* at 8. Appellant thus requested an arrest of judgment, a new trial, or a PCRA evidentiary hearing.

The Commonwealth filed a motion to dismiss, arguing Appellant's petition was facially untimely, did not meet the newly-discovered fact

_____

[9] Appellant cites Watkins' trial testimony "that his statement was coerced by police, who told him that he would be charged with a crime if he did not give a statement." Appellant's Second PCRA Petition at 5, *citing* N.T. Trial, 4/6/10, at 200-02.

timeliness exception, and in any event, failed to properly plead after-discovered evidence. On June 4, 2019, the PCRA court issued Pa.R.Crim.P. 907 notice of intent to dismiss Appellant's petition without a hearing. Appellant filed a response, along with a supplemental PCRA petition.

On July 19, 2019, the court entered the underlying order, dismissing Appellant's petition as untimely filed. Appellant filed a timely notice of appeal[10] and complied with the court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

Appellant presents one issue for our review:

> Did the PCRA Court abuse its discretion in dismissing [Appellant's] Petition as untimely where he proved that his claim meets the newly discovered evidence exception to the PCRA's time-bar?

Appellant's Brief at 2.

Appellant first avers the PCRA court abused its discretion in concluding he did not meet the newly-discovered fact exception. He maintains he "could not have learned of Ms. Green's recantation earlier through the exercise of reasonable diligence," and indeed, the trial record shows he "did, in fact, try to locate [Green and her husband] prior to trial through reasonable diligence."

---

[10] The thirtieth day after the entry of the order was Sunday, August 18, 2019. Appellant's notice of appeal was timely filed the following day, Monday, August 19th. **See** 1 Pa.C.S. § 1908 (when last day of any period of time referred to in any statute falls on Sunday, such day shall be omitted from computation); Pa.R.A.P. 903(a) (notice of appeal shall be filed within 30 days after the entry of the order from which the appeal is taken).

Appellant's Brief at 14. Next, Appellant avers Green's affidavit also establishes after-discovered evidence, for which he is entitled to a hearing. In support, he reasons: (1) "the proffered fact is not merely that Ms. Green existed as a witness[,] but instead that Ms. Green knew [Appellant] from the neighborhood basketball courts and she explicitly told police that [Appellant] was not on the street for the shooting[;]" (2) "Ms. Green's putative testimony is not cumulative or corroborative of other evidence at trial, nor would it be used merely for impeachment purposes[;]" and (3) "[t]he omission of the proffered evidence denied [Appellant] a new trial." *Id.* at 13, 19. We conclude no relief is due.

"[W]e examine whether the PCRA court's determination 'is supported by the record and free of legal error.'" *Commonwealth v. Mitchell*, 141 A.3d 1277, 1283–84 (Pa. 2016) (citations omitted). Furthermore, "[t]he PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Cruz*, 223 A.3d 274, 277 (Pa. Super. 2019) (citation omitted).

"[T]he timeliness of a PCRA petition is a jurisdictional requisite." *Commonwealth v. Brown*, 111 A.3d 171, 175 (Pa. Super. 2015). There is no dispute the present June 15, 2018, petition, was facially untimely pursuant

to Section 9545(b).[11]   As stated above, Appellant invoked the newly-discovered fact exception at Subsection 9545(b)(1)(ii).  Under this subsection, a petitioner must plead and prove "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]"   42 Pa.C.S. § 9545(b)(1)(ii).   This Court has explained:

> Due diligence demands that the petitioner take reasonable steps to protect his own interests.  **A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence.  This rule is strictly enforced.**  Additionally, the focus of this exception "is on the newly discovered **facts**, not on a newly discovered or newly willing source for previously known facts."

**Brown**, 111 A.3d at 176 (citations omitted and some emphasis added).  We further note that because Appellant's claim relies on Green's April 30, 2018, affidavit, it is governed by the prior version of Subsection 9545(b)(2), which

---

[11] On direct appeal, the Pennsylvania Supreme Court denied Appellant's allowance of appeal on November 28, 2012.  Thus, Appellant's judgment of sentence became final on February 26, 2013, when the 90-day period for seeking *certiorari* with the United States Supreme Court expired.  **See** 42 Pa.C.S. § 9545(b)(3) (judgment becomes final at, *inter alia*, the expiration of time for seeking discretionary review in the Supreme Court of the United States).  Appellant then generally had one year, or until February 26, 2014, to file a PCRA petition.  **See** 42 Pa.C.S. § 9545(b)(1) (any petition, including second or subsequent petition, must be filed within one year of the date judgment of sentence is final).  The instant petition was filed more than four years later.

required his petition to be "filed within 60 days of the date the claim could have been presented." *See* 42 Pa.C.S. § 9545(b)(2).[12]

Subsection 9545(b)(1)(ii) is "an initial jurisdictional threshold," which "does not require any merits analysis of an underlying after-discovered-evidence claim." *Brown*, 111 A.3d at 176-77. "Once jurisdiction is established, a PCRA petitioner can present a substantive after-discovered-evidence claim" pursuant to Subsection 9543(a)(2)(vi). *Id.* at 176. That subsection provides relief when a petitioner pleads and proves by a preponderance of the evidence that "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S. § 9543(a)(2)(vi).

Here, the PCRA court concluded Appellant failed to meet the newly-discovered fact timeliness exception. It reasoned, in part:

> [N]owhere in [Appellant's] petition nor affidavit are there any allegations as to where the witness[, Green,] has been in the almost eight years between the date of the trial and the April 30, 2018, date counsel alleges she was located. Nowhere in the petition nor affidavit are there any allegations that the witness purposely avoided being located or fled the jurisdiction. We note

---

[12] Appellant contends he timely filed the PCRA Petition "within 1-year of his" April 30, 2018, discovery of Green's "putative testimony." Appellant's Brief at 17. Subsection 9545(b)(2) subsection was amended in 2018 to enlarge the time for invoking a timeliness exception, from 60 days to one year. *Commonwealth v. Reid*, 235 A.3d 1124, 1144 n.12 (Pa. 2020). The amendment, however, applies to claims arising on or after December 24, 2018. *Id.* Thus, is it not applicable here.

her current address is a Philadelphia address. Nowhere in the petition nor affidavit are there any allegations as to any prior attempts to locate her before April, 2018. Nowhere in the petition nor affidavit are there any allegations as to how she came to be located in 2018.

Such claims are necessary in order to plead and prove sufficient facts to meet the legal requirement of due diligence. Instead, . . . paragraph 39 of the Petition makes a boilerplate allegation, "[Appellant], by exercise of due diligence, was unable to locate Ms. Green at [the] time of trial and has only recently been able to make contact with her." This is not enough, as it is a conclusion, not an offer to prove facts. As [Appellant] failed to meet his burden to **plead** and prove the exception in [Subsection] 9545(b)(1)(ii), the Petition was untimely and this Court does not have jurisdiction to entertain it.

PCRA Ct. Op. at 6 (paragraph break added).

On appeal, Appellant responds: "[T]he PCRA court seems to suggest [he] should have been looking for Ms. Green continuously between his April 2010 conviction and his discovery in April 2018[.]" Appellant's Brief at 15. Appellant contends Pennsylvania law instead "requires only reasonable efforts to locate new facts based on the particular circumstances of the case." *Id.* This argument ignores the PCRA court's analysis that his petition failed to present any support to his "boilerplate" claim that he exercised due diligence. *See* PCRA Ct. Op. at 6. Our review of the petition supports the PCRA court's finding; the petition lacks any discussion as to what efforts he undertook post-trial to locate Green, as well as any mention of Green's whereabouts in the eight years since Appellant's trial. On appeal, Appellant avers Green "confirmed to the investigator[ ] that she moved out the neighborhood shortly after the shooting due to growing violence[.]" Appellant's Brief at 7. Green's

- 12 -

affidavit, however, makes no such statement, and even if it did, Appellant does not explain why her moving from the North Philadelphia neighborhood thwarted his ability to locate her for eight years. We further agree with the PCRA court the petition provides no explanation of how Appellant located Green on April 30, 2018, which could elucidate his alleged due diligence efforts. In sum, we agree with the PCRA court that Appellant failed to "explain why he could not have learned the new fact[ ] earlier with the exercise of due diligence." *See Brown*, 111 A.3d at 176. As stated above, this requirement "is strictly enforced." *Id.*

We agree with the PCRA court that Appellant failed to properly plead the newly-discovered fact exception, his petition was thus untimely, and the court lacked jurisdiction to review the merits of his claim of after-discovered evidence. *See Mitchell*, 141 A.3d at 1283–84; *Brown*, 111 A.3d at 175. We affirm the order dismissing his petition.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/29/20